UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

In the Matter of

KENTUCKIANA HEALTHCARE, LLC                    BANKR. CASE NO. 10-34230
                                                          CHAPTER 11

_____

PRN PHARMACEUTICAL SERVICES, LP                              PLAINTIFF

v.                                    CIVIL ACTION NO. 3:12CV-705-S
                                      ADVERSARY PROCEEDING NO. 10-03100

BROWNSBURG HEALTHCARE LLC, et al.                           DEFENDANTS

## MEMORANDUM OPINION AND ORDER

In this Adversary Proceeding, PRN Pharmaceutical Services LP ("PRN") seeks payment for goods and services provided to various Indiana nursing homes under a series of contracts. PRN sued the owners of the nursing homes and two management companies, one of whom is the debtor, Kentuckiana Healthcare, LLC ("Kentuckiana"), for payment of allegedly unpaid bills. The defendants counter- and cross-claimed under a variety of legal theories.

This matter has an extensive history which we briefly revisit here. As noted in our earlier Order (No. 12CV-705, DN 1), this case began in Marion County, Indiana, Superior Court as a garden variety civil action. It was removed to the United States District Court for the Southern District of Indiana, and was remanded back to Marion County Superior Court for lack of diversity jurisdiction. It was then removed to the United States Bankruptcy Court for the Southern District

of Indiana. This removal occurred after defendant Kentuckiana Healthcare, LLC and Paramount Healthcare Group, Inc. ("PHG"), the parent company of the two of the Paramount defendants,[1] filed petitions for Chapter 11 relief in the United States Bankruptcy Court for the Western District of Kentucky. The matter was then transferred to the United States Bankruptcy Court for the Western District of Kentucky, and became Adversary Proceeding No. 10-03100.[2] PRN, Omnicare, and the Trustee for Kentuckiana then moved this court to withdraw the reference of this matter.

Prior to entertaining the motion to withdraw the reference, we ordered the parties to brief the issue of the jurisdictional basis for this court to entertain the case. We questioned our jurisdiction over the matter, as the case is grounded entirely in state law and no diversity jurisdiction exists. Thus, this court has jurisdiction over the matter only if it arises in or relates to a bankruptcy case. 28 U.S.C. § 1334(b). Because only one of the parties, Kentuckiana, is a party to a bankruptcy proceeding, and because the relationships between the debtor and non-debtor parties were unclear, we ordered additional briefing concerning satisfaction of the jurisdictional requirement of § 1334(b).

Upon review of the briefs in which the parties unanimously urged this court to find subject matter jurisdiction, the court determined that the matter "related to" a bankruptcy and withdrew the reference only for purposes of conducting a trial by jury, finding that:

> Generally, proceedings "related to" a bankruptcy include (1) causes of action owned by the debtor which become property of the estate pursuant to 11 U.S.C. § 541, and (2) suits between third parties which have an effect on the bankruptcy estate. *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 n.5 (1995). The United States Court of Appeals for the Sixth Circuit has adopted an expansive test for determining whether a proceeding is "related to" a bankruptcy. "[T]he 'usual articulation of the test for

---

[1] Paramount of Indianapolis, LLC and Paramount Healthcare Management, LLC.

[2] The Order transferring the case from the United States District Court for the Southern District of Indiana did not contain analysis or citation of authority for the transfer. Presumably, the court transferred the case pursuant to 28 U.S.C. § 1412.

> determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.'" *In re Dow Corning Corp.*, 86 F.3d 482, 490 (6th Cir. 1996) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)). According to the Court of Appeals, an action is "'related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.'" *Id.* (quoting *Pacor*, 743 F.2d at 994).
>
> All of the claims in this adversary proceeding relate to a bankruptcy proceeding. The claims by PRN against Kentuckiana and Kentuckiana's claims against PRN and Omnicare clearly relate to a bankruptcy proceeding because their resolution – whether in favor of Kentuckiana or in favor of PRN – could undoubtedly affect Kentuckiana's estate.
>
> The claims by PRN against the Paramount Defendants and the claims by the Paramount Defendants against Omnicare relate to a bankruptcy proceeding for a similar reason. The Paramount Defendants themselves are not parties to a bankruptcy proceeding. However, the holding company that owns them, PHG, has apparently also filed for Chapter 11 relief in the bankruptcy court in this district. According to the Paramount Defendants, PHG does not operate any business on its own, so any funds to repay its creditors will necessarily come from the Paramount Defendants. Because of this, claims related to the Paramount Defendants could – and almost certainly would – have an effect on the bankruptcy estate of PHG.
>
> Finally, the claims against the Facility Defendants relate to a bankruptcy proceeding because the Facility Defendants assert a right to indemnity from Kentuckiana. Thus, the claims against the Facilities will potentially impact Kentuckiana's liabilities, and therefore relate to the bankruptcy proceeding.

No. 3:11MC-5-S, DN 26, pp. 2-3.

On October 23, 2012, the court ordered that all pretrial motions, including dispositive motions, be heard by the Bankruptcy Court. Upon completion of discovery and determination of pretrial and dispositive motions, the matter would then come before this court for trial.

Pretrial matters thus remained pending before the Bankruptcy Court. A review of the docket sheet evidences the following:

(1) The parties have made little progress toward trial readiness in this matter. In November, 2013, over one year after the court's order concerning trial preparation, an Amended Complaint was filed. (No. 10-03100, DN 164). A Proposed Amended Scheduling Order was tendered to the Bankruptcy Court on January 8, 2014 (No. 10-03100, DN 180) which evidences that discovery remains ongoing at present. As recently as February 21, 2014, after the court's denial of a motion for protective order concerning the taking of depositions, the parties requested that the Bankruptcy Court *not* enter the proposed scheduling order. (No. 10-03100, 2/21/14 Hearing).

(2) Despite this court's October 23, 2012 Order, and the issuance by the Sixth Circuit three days later of the decision of *Waldman v. Stone*, 698 F.3d 910 (6th Cir. 2012), *cert. denied,* 133 S.Ct. 1604 (2013), questions concerning the procedural posture of the case and the Bankruptcy Court's ability to resolve pretrial matters were not raised with this court until January 8, 2014 by the filing of a motion for a pretrial conference. (No. 12CV-705, DN 10). Kentuckiana also requested in that motion that the court schedule a trial date, despite the fact that discovery in the case has not been concluded nor dispositive motions filed and decided.

The motion for pretrial conference brought to this court's attention Kentuckiana's motion of November 11, 2013 for dismissal of all claims between PRN Pharmaceutical Services, LP; Paramount Healthcare Management Group, LLC; Paramount of Indianapolis, LLC; and Omnicare, Inc. due to lack of subject matter jurisdiction. (No. 10-03100, DN 157). It is unclear what standing Kentuckiana has to seek dismissal of claims between these other entities. Bankr.R. 7019 provides that "if *an entity joined as a party* raises the defense that the court lacks jurisdiction over the subject matter and the defense is sustained, the court shall dismiss *such entity* from the adversary proceeding..." (emphasis added). In any event, we construe Kentuckiana's motion as one seeking

reconsideration of this court's October 23, 2012 Order addressing subject matter jurisdiction and withdrawal of the reference.

Kentuckiana described the action in its motion for pretrial conference as "generally involv[ing] [PRN]'s suit to recover sums allegedly due for unpaid pharmaceutical products and counterclaims by defendants for overbilling by [PRN] and [Omnicare]." (No. 12CV-705, DN 10). Kentuckiana has now altered its position concerning subject matter jurisdiction over the entities referred to as the "Paramount defendants," seeking to jettison them from the case. PRN and Omnicare object to the motion. (No. 10-03100, DN 167).

While this court found previously that subject matter jurisdiction exists, as the claims by and against the various parties "relate to" a bankruptcy, the motions before the court have prompted further review and the tentative decision of this court to abstain from hearing this matter, pursuant to 28 U.S.C. § 1334(c)(1). The question of permissive abstention may be raised by this court *sua sponte*, as long as the parties have an opportunity to be heard. *In re Gregory*, No. 11-07081, 2011 WL 5118457 (Bankr.M.D.Tenn. Oct. 27, 2011). The parties have provided this court ample analysis concerning the nature of the claims and subject matter jurisdiction. However, the parties have not had an opportunity to address the factors considered in a permissive abstention analysis. Therefore, the parties will be afforded a brief period of time to respond to the proposed exercise of the court's discretion to abstain in the interest of justice, the interest of comity with state courts and respect for state law. *In re Lowenbraun*, 453 F.3d 314, 320 (6th Cir. 2006); *In re Underwood*, 299 B.R. 471 (Bankr.S.D.Ohio 2003).

At the time the parties filed briefs concerning the court's jurisdiction, Paramount Healthcare Group, Inc. ("PHG"), the parent company of the Paramount defendants, was also in bankruptcy in the Western District of Kentucky.

The PHG Chapter 11 proceeding was dismissed prior to the court's order addressing subject matter jurisdiction. Kentuckiana now urges that the claims by and against the Paramount defendants bear no relation to the bankruptcy proceeding. PRN and Omnicare urge a connection of the Paramount defendants to the Kentuckiana bankruptcy. However, the Paramount defendants and Kentuckiana have not asserted claims against each other. Further, unlike the HCC defendants, Paramount of Indianapolis has not asserted an indemnity claim against Kentuckiana, as it apparently did not have a contract with Kentuckiana for the management of its Cambridge Manor facility. Facially, it appears that the claims between PRN and the Paramount defendants bear no relation to the Kentuckiana bankruptcy.

However, PRN notes that the Trustee for the Kentuckiana bankruptcy estate recently filed an adversary proceeding against Frank and Linda Littriello, the Paramount defendants, and other non-defendant Paramount entities (No. 12-03084) raising allegations of fraud and conversion. Littriello was apparently the 100% owner of Kentuckiana and all of the various Paramount entities, and is accused of playing "hide the ball" with the companies' funds. The Trustee seeks to establish set-off rights, and avoid and recover preferences and fraudulent transfers on behalf of the Kentuckiana bankruptcy estate through this additional adversary proceeding. Pertinent here is the fact that the Trustee has alleged that "Kentuckiana Healthcare improperly paid Paramount Management $1,153, 811.89 in fees that should have been paid to PRN Pharmaceutical, in violation of the agreements with [the facilities defendants], the Employee Leasing Agreement and the

Amendment thereto." (No. 12-03084, ¶ 39). This claim mirrors, in many respects, PRN's claims against the Paramount defendants. Additionally. and the Paramount defenants have counterclaimed for "overbilling" by Omnicare. We find, therefore, that the outcome of the claims between PRN, Omnicare, and the Paramount defendants could conceivably have some kind of impact on the bankruptcy estate. *Dow Corning*, 86 F.3d at 490.

Regardless, this court should have considered whether to permissively abstain under §1334(c)(1). We find no impediment to our consideration of the question at this time.

Section 1334(c)(1) states that, [e]xcept with respect to a case under Chapter 15 of Title 11, nothing in [§ 1334] prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."

As a general proposition, abstention from the exercise of federal jurisdiction is "the exception, not the rule." *In re Nationwide Roofing and Sheet Metal*, 130 B.R. 768, 778 (Bankr.S.D.Ohio 1991). As noted in *In re Johnston*, "abdication of the obligation to decide cases can be justified under the permissive abstention doctrine only in the 'exceptional circumstances where the order to the parties to repair to State Court would clearly serve an important countervailing interest.'" *In re Johnston*, 484 B.R. 698, 714 (S.D.Ohio 2012), *quoting McDaniel v. ABN Amro Mortg. Group*, 364 B.R. 644, 649 (S.D.Ohio 2007), *quoting In the Matter of Tremaine*, 188 B.R. 380, 384 (Bankr.S.D.Ohio 1995). The Sixth Circuit made clear in *Dow Corning*, however, that "The abstention provisions of 28 U.S.C. § 1334(c) qualify Section 1334(b)'s broad grant of jurisdiction. *In re Salem*, 783 F.2d at 635. It is for the district court to 'determine in each individual

case whether hearing it would promote or impair efficient and fair adjudication of bankruptcy cases.' *Id.*" *Dow Corning*, 86 F.3d at 497.

This court is directed to employ a multifactor balancing test in evaluating the propriety of permissively abstaining from hearing this matter. Not every element must be satisfied nor all factors weigh in favor of abstention for its exercise to be appropriate. *See, Johnston*, 484 B.R. at 715, *citing In re Martin Designs, Inc.*, No. 08-60431, 2009 WL 2707215 (Bankr.N.D.Ohio Aug. 26, 2009). Additionally, the importance of various factors will vary with the circumstances of each case, and no one factor is determinative. *See, McDaniel*, 364 B.R. at 650, *citing In re Chicago, Milwaukee, St. Paul & Pacific R.R.*, 6 F.3d 1184, 1189 (7th Cir. 1993). Further, permissive abstention is available in both core and non-core proceedings. *In re Gregory*, *supra.* at *1, *citing Underwood, supra.*

The following factors are relevant to the court's consideration of permissive abstention under § 1334(c)(1):

(1) The effect or lack of effect on the efficient administration of the estate if the court abstains;

(2) The extent to which state law issue predominate over bankruptcy issues;

(3) The difficulty or unsettled nature of the applicable state law;

(4) The presence of a related proceeding commenced in state court or other nonbankruptcy court;

(5) The jurisdictional basis, if any, other than 28 U.S.C. § 1334.

(6) The degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

(7) The substance rather than form of an asserted core proceeding;

(8) The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9) The burden of this court's docket;

(10) The likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

(11) The existence of a right to jury trial;

(12) The presence in the proceeding of non-debtor parties; and

(13) any unusual or other significant factors.

*Johnston*, 484 B.R. at 714, *citing Nationwide*, 130 B.R. at 770-80; *Tremaine*, 188 B.R. at 385; *Antioch Co. Litigation Trust v. Hardman*, 438 B.R. 598, 609-10 (S.D.Ohio 2010); *see also, Delphi Automotive Systems, LLC v. Segway, Inc.*, 519 F.Supp2d 662, 670-71 (E.D.Mich. 2007).

The court finds that factors 2, 5, 6, 7, 8, 9, 11, and 12 favor abstention in this matter; factors 1, 3, and 10 are neutral; and 4 and 13 have no application in the analysis. Thus the court is strongly persuaded that abstention is the appropriate course of action.

First, we note that this matter was originally brought as a garden variety Indiana state court civil action. There are no issues of federal law implicated in the resolution of this adversary proceeding. There is no other ground for jurisdiction by a federal court absent the relation to a bankruptcy. Seven of eight parties to the litigation are non-debtor parties. They are all located in Indiana.

For purposes of this abstention analysis, we must consider the relatedness or remoteness of the proceeding to the main bankruptcy case. We note that PRN's principal claims for recovery of over $1 million in unpaid invoices are asserted against parties other than the debtor. The debtor was not a signatory to the goods and services contracts in issue. The defendants who have been sued under these contracts have filed claims in the Kentuckiana bankruptcy case for undetermined sums in indemnity, should they be found liable to PRN. It is only through these conditional indemnity

cross-claims and two ancillary direct claims by PRN against the debtor that the matter relates to a bankruptcy, as noted in our subject matter analysis. Thus, resolution of the principal and predominant state law claims only secondarily relates to the main bankruptcy case. We further note that the adversary proceeding recently filed by the Trustee raises the issue of PRN's unpaid bills, but seeks to recoup the funds for the bankruptcy estate. These claims are thus different in kind from the principal state law contract claims at issue in this proceeding.

This court has already determined that PRN has a right to a jury trial which may be had in the Indiana state courts. Clearly the Indiana courts would have an interest in contract disputes between Indiana businesses. These state law claims may be easily severed from core bankruptcy proceedings, and post-trial enforcement of any Indiana judgments can be handled by the bankruptcy court. In this court's view, the plaintiff's initial choice of forum, the Indiana state courts, should be respected, and the Indiana courts should be afforded the opportunity to address these significant state law contract matters.[3]

In light of the present posture of the case, we find that a transfer to the Indiana state courts at this time would not negatively impact the efficient administration of the estate. The matter is not ready for trial. Depositions are presently being taken and dispositive motion deadlines have yet to be established.

The court is not privy to the motivation of Kentuckiana for removal of this matter. The parties were unable to resolve the claims in the bankruptcy forum, and the parties now believe that a trial will be necessary. Forum shopping is not an issue in this case.

---

[3]We note that unsettled questions concerning the Bankruptcy Court's powers in the wake of *Stern v. Marshall,* 131 S.Ct. 2594 (2011), *Waldman v. Stone,* 698 F.3d 910 (6th Cir. 2012),and *EBIA v. Arkison*, 702 F.3d 553 (9th Cir. 2012), *cert. granted*, 133 S.Ct. 2880 (2013) may impact the Bankruptcy Court's ability to assist the district court, should it entertain this large piece of Indiana state litigation.

Additionally, there are no difficult or unsettled issues of Indiana law which would militate in favor of transfer.  By the same token, there are numerous claims involving Indiana contracts and Indiana businesses.  While this court could decide the case, there is no impetus for this forum to do so.  Thus the question as to the difficulty of the issues, or lack thereof, does not weigh strongly for or against abstention in this case.

Finally, we note that the court is not aware of any other nonbankruptcy proceedings pending or other unusual factors which would impact the abstention analysis.

In conclusion, the court finds that the balance of factors weigh strongly in favor of abstention by this court and remand of this action to the Indiana State Court from which it was removed.

As the matter of abstention was raised by this court *sua sponte*, the parties will be afforded a period of fourteen days in which to show cause why this memorandum opinion should not be rendered a final judgment of this court and the matter remanded.

For the reasons stated herein and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that the motion of the debtor, Kentuckiana Healthcare, LLC, for dismissal of all claims between PRN Pharmaceutical Services, LP Paramount Healthcare Management Group, LLC, Paramount of Indianapolis, and Omnicare, Inc. for lack of subject matter jurisdiction (10-03100-thf, DN 157) is **DENIED,** and the motion of Kentuckiana Healthcare, LLC for a pretrial conference (12CV-705, DN 10) is **HELD IN ABEYANCE PENDING FURTHER ORDER OF THE COURT.**

**IT IS FURTHER ORDERED** that the parties are granted a period of **FOURTEEN (14) DAYS FROM THE DATE OF ENTRY OF THIS ORDER** in which to **SHOW CAUSE** why this Memorandum Opinion and Order should not be entered as a final judgment and the matter remanded to the Marion County, Indiana, Superior Court.

**IT IS SO ORDERED.**

March 6, 2014

              **Charles R. Simpson III, Senior Judge**
                **United States District Court**